## Watson v. Porter.

(Decided March 25, 1932.)

FORD & FORD for appellant.

BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to June, 1927, a corporation was organized under the laws of the state of Michigan, known as Glover Watson Organization, Incorporated. It had a large authorized capital stock with the appellant and defendant below, Glover Watson, holding a majority of it, giving him the controlling interest. The general business of the corporation was dealing in real estate and it localized its business, as such dealer in real estate, in and around the city of Detroit. Defendant was the president of the company, and seems to have possessed almost if not quite unlimited authority in conducting the affairs of the corporation which purchased suburban real estate near the city of Detroit and platted it into streets and lots, and then sold the lots to purchasers. Claude Robinson was the vice president of the corporation, and it also had a secretary and a treasurer, and perhaps other officers. Watson conceived the idea that the company, not only needed a cashier, but he also desired a citizen of his own state, Kentucky, to fill it. Robinson suggested to him the name of plaintiff, J. C. Porter, who was then assistant cashier in a bank in Georgetown, Ky. At the suggestion of Watson, Robinson communicated the facts to Porter, who visited the office of the company in Detroit, and also Watson, its president.

The negotiations resulted in Porter being employed at a salary of $500 per month, and which he says was to continue for a period of five years, but which period of continuance Watson controverts. He admits, however, the terms of the employment, but which he testified was for no fixed period. Whatever its terms were, it was not in writing, but rested only in parol. Porter immediately began work as cashier on the stipulated salary and continued to do so until some time in October, 1927, when he was informed by Watson that his salary could no longer continue as such, and that it should be reduced to $75 per week with a change of duties from that of cashier of the corporation to that of a solicitor of prospective purchasers of real estate in which the corporation was dealing. In the discharge of the latter duties the plaintiff was put in charge of a scheme inaugurated by the company, whereby he conveyed from different sections of the country, but principally from Kentucky, any and all prospective purchasers of lots from their homes to and returning from Detroit, with all of their expenses

defrayed by the corporation. Porter continued in the latter employment at the reduced compensation until December 31, 1928, at which time there was due and unpaid to him nine weeks' compensation, amounting to $675.

In the early part of 1929 the corporation was placed in the hands of a receiver, which Watson states was. a friendly step to preserve the frozen assets of the corporation, consisting chiefly in deferred payments on real estate purchased by the corporation's customers. On July 11, 1929, plaintiff filed this action against defendant individually in the Scott circuit court, and in his petition he alleged that his original contract, as well as the subsequent alteration thereof, was made with defendant personally and individually, and he sought judgment against him for the amount of his unpaid claim.

The material averments of the petition were denied, and it was affirmatively averred that the employment of plaintiff was by the corporation, though effected through Watson, its president, and that the latter was in no wise personally obligated to pay any part of the compensation sued for. Appropriate pleadings made the issues and upon trial the jury, under the instructions given to it by the court, returned a verdict in favor of plaintiff which the court declined to set aside on defendant's motion for a new trial, and from the judgment rendered thereon he prosecutes this appeal, urging through his counsel only one ground for a reversal, and which is: That the court erred in refusing the motion of defendant for a directed verdict in his favor, but, if mistaken in that, then the verdict is flagrantly against the evidence.

The testimony of plaintiff, as well as that of his witness, Robinson, was to the effect that defendant in his negotiations with plaintiff for the employment of the latter, employed language which on its face would indicate that he personally was employing plaintiff, illustrations of which are: "I will give you $500 per month, and I want you to work for me," "If I were to stop selling lots today, we could not get through with this thing in less than five years, and your job will last five years," to which latter plaintiff responded: "On that statement, I will come to Detroit and work for you." Robinson stated that "Mr. Watson said he wanted him (plaintiff) up there (office at Detroit); wanted a good man up there

to represent him; wanted an honest man from Kentucky; and said he was tired of fooling with those Northerners.''

The testimony shows, without contradiction, that Watson did practically if not all of the employing and the contracting for the service of all employees, and that he negotiated all such contracts in similar language, i. e., the employment of personal pronouns referring to himself as the individual representing his corporation. However, no witness testified that any such contract was with any person except the corporation, and plaintiff himself made no such claim until after the corporation was put into the hands of a receiver. Defendant with other officers of the corporation testified that plaintiff's employment was by the corporation only. Every witness in the case, testifying for either side, stated that all services rendered by plaintiff were performed for the corporation and in its home office, except defendant, who said that he did some slight bookkeeping for defendant at the latter's request after the employment began. But there was no testimony in the case even remotely indicating that plaintiff's employment by Watson as president of the corporation was for the purpose of serving him personally, other than the testimony of defendant above referred to, and he stated, without reservations, that he knew throughout his employment that he was performing services for the corporation and he was actually one of its officers.

There was issued to him during his employment, in both of the above capacities, as many as, and perhaps more than, 86 checks, that being the number brought to this court. Every one of them was drawn on the corporation and was indorsed by and paid to plaintiff. The greater number of them were issued in payment of his monthly salary, while the others were for expense money incurred under his last or altered employment. Plaintiff was never deceived as to the one whom he was serving, nor do we think he was ever deceived as to who was his actual employer. Every act of his during his services was for the benefit of the corporation alone, and none of which accrued to the defendant personally, except indirectly as a stockholder of the corporation, and all of which plaintiff was aware throughout his period of service.

A maxim, applicable in the interpretation of human conduct, is that ''actions speak louder than words,'' and

216

the truth of that saying is emphasized when the "words" are employed after the transaction is over. The weak peg upon which plaintiff hangs his case, i. e., that defendant employed the personal pronoun, referring to himself in the negotiations of the employment, when viewed in connection with the subsequent services he rendered and the entire circumstances of the case, is insufficient to sustain plaintiff's contention, or to create even a scintilla of evidence in support thereof. If the terms of his employment, the circumstances thereof, and the conditions under which he served, were such as to throw doubt upon the issue as to his true employer, a different question would be presented. But the facts of the case leave no room for doubt as to who was plaintiff's actual employer and the one to whom he looked for a fulfillment of his contract.

We therefore conclude that the court erred in not sustaining defendant's motion for a peremptory instruction in his favor, for which reason the judgment is reversed, with directions to grant the new trial, and to set aside the judgment and for proceedings consistent with this opinion.