## Silvers v. Greene.

Nov. 3, 1939.

Rose & Rose for appellant.
J. B. Snyder for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

This is an appeal from, a judgment dismissing plaintiff's petition after the court, at the conclusion of all the evidence, had peremptorily instructed the jury to return a verdict for defendant, hence it is necessary to briefly review the evidence.

The Greene-Silvers Coal Company was a corporation having 200 shares of stock of which J. S. Greene and J. W. Silvers owned 67½ shares each, E. M. Howard, 45 shares, and T. R. Middleton and A. W. Babbage, 10 shares each. Greene was president of the corporation, Babbage was secretary, and Silvers was general manager. The record does not show who was treasurer but appellant's brief recites that Silvers was general manager and treasurer, and as this is not denied in appellee's brief, we accept it as correct. The corporate affairs of the company were loosely conducted with but slight attention paid to the keeping of its records. Greene was the dominant figure and treated the business of the corporation as if he were its sole owner, and there is nothing in the record to show the other stockholders objected to or questioned his actions; on the other hand, they appear to have acquiesced therein. Greene customarily used the personal pronoun "I" when referring to the corporation or in transacting its business. His testimony is replete with such expressions as, "I started Jess (Silvers) at $250.00 per month;" "I raised Jess' salary from the time we started up;" "I raised my salary," etc.

The corporation was engaged in the business of mining and selling coal, with Greene drawing a salary of $100 per month as president and Silvers' salary as general manager was $350 per month. In addition thereto Greene and Silvers each drew a dividend on their stock of $200 per month and the other stockholders drew a monthly dividend in proportion to the amount of stock each owned. There is nothing in the record to show when or in what manner these salaries and dividends were fixed by the corporation as none of its records were introduced in evidence. It is apparent from the record that the reason for the corporation's existence was that the incorporators sought to escape personal liability in their business venture in operating this mine.

Silvers' health failed in the winter of 1935, and in

the middle of the following January he went to Florida where he remained about one month. Upon returning to his home in Harlan, his health did not permit him to actively conduct his business and much of his time was spent in hospitals in an effort to regain his health until he died in Baltimore in June 1936. While Silvers was in a hospital in Louisville in February 1936, Greene reduced Silvers' salary from $350 to $100 per month, and raised his own salary from $100 to $350 per month, or to express it in the language of Mrs. Silvers, Greene swapped salaries with her husband.

After the death of her husband Mrs. Silvers qualified as his administratrix and instituted this action in the Harlan Circuit Court against Greene to recover $1000 in salary which she contends Greene wrongfully took from her husband. The petition as amended avers Greene took an appropriated $250 per month for the four months of February, March, April and May, 1936, from the salary of Silvers as an officer of the Greene-Silvers Coal Company; that the $1000 was taken by Greene during the life of Silvers and under his promise to Mrs. Silvers to repay the money if his action was not satisfactory to Silvers and to her; that since the death of her husband, she, as his personal representative, made demand upon Greene to return this money and he refused. Several preliminary pleadings were filed, but it is unnecessary to discuss them, and the issue was joined by defendant filing an answer which was a traverse.

The testimony of the appellant was that Greene came to her home in February, 1936, and informed her that he was swapping salaries with her husband and if his action did not meet with her approval and that of her husband, who was then in a hospital, he would return the money. Greene's version of this conversation is that he told Mrs. Silvers he was reducing her husband's salary $250 per month and was raising his own in that amount, but he did not promise her to make this satisfactory to her or her husband. We must accept Mrs. Silvers' testimony for the purpose of determining the correctness of the ruling of the court in directing a verdict against her. Considerable evidence was taken as to what duties Silvers and Greene performed for the corporation both before and after the failure of Silvers' health. But such testimony has no bearing on the issue to be determined, which is, was Green acting individual-

ly, or as the president of the Greene-Silvers Coal Company in this conversation with Mrs. Silvers concerning her husband's salary?

Obviously, Greene was acting as president of the corporation in his conversation with Mrs. Silvers because as an individual he had no control over Silvers' salary or any other corporate matters. The facts in this case are similar to those in Watson v. Porter, 243 Ky. 212, 47 S. W. (2d) 1025, wherein Watson in conducting the affairs of the corporation usually did so by using the personal pronoun "I." Despite the fact that Watson transacted business for the corporation as though he were conducting his own private business, the record plainly showed Watson was acting for and on behalf of the corporation and not for himself individually, and this court held that the corporation and not Watson was bound by his words.

It is not necessary for us to determine whether the action of Greene as president of the corporation in reducing Silvers' salary was the duly authorized act of the corporation, or whether his alleged promise to repay the sum taken from Silvers' salary was binding on the corporation. These questions are not before us. We are only deciding that when Greene conversed with Mrs. Silvers on the subject of reducing her husband's salary and of increasing his own, he was speaking in the capacity of the president of the corporation and not in an individual capacity, and any promise he might have made her concerning her husband's salary did not bind him personally. Whether or not the corporation was bound by any promise Greene may have made Mrs. Silvers is not a matter before us.

Judgment affirmed.